FILED

PETER SZANTO 949 887 2369
P. O. BOX 10451
Newport Beach  CA  92658

2010 MAR 29  AM 11: 2⬝

CLE⬝⬝
CENTRAL DIST. ⬝⬝ CALIF.
⬝⬝ ANGELES

BY____

# United States District Court

## Central District of California

Western Division - 312 N. Spring St., Los Angeles CA 90012

CV10  2263 ◄ AHM (Cwx)

USDC # _____

Peter <u>Szanto</u>, an individual, <u>Plaintiff</u>,

## <u>vs.</u>

Honorable Charles Stevens <u>Crandall</u>,

Judge of the California Superior Court.

and

Peter Kurt Peterson, Edward Donald Thirkell,

Robert Samuel Lewin, Julia Eva Lingys,

Kenneth Howard Horowitz, Katharina Nina

Reynolds, all members of the State Bar of

California.

<u>Defendants</u>.

All of the defendants are state actors.


## ** <u>JURY is REQUESTED</u> **

<u>Civil Action for:</u>

1. <u>Deprivation of Civil Rights</u>

2. <u>Civil Conspiracy</u>

3. <u>Abuse of Judicial Process</u>

4. <u>Malicious Prosecution</u>

5. <u>Barratry</u>

6. <u>Subornation of Fraudulent</u>
   <u>Real Property Transfer</u>

7. <u>Defamation</u>

8. <u>Intentional Infliction of</u>
   <u>Emotional Distress</u>

*<u>Plaintiff requests there be no</u>*

*<u>magistrate assignment herein</u>*

**A Federal Question Under**
<u>**42 U.S.C.A. § 1983**</u>

Assigned to: Hon

Complaint USDC CDCA Mar 25, 2010 – pg. 1 of 23

```
3/29/2010 11:33:27 AM  Receipt #: 134800
          Cashier : KPAGE [LA 1-1]
Paid by: PETER SZANTOS
2:CV10-02263
2010-086900     5 - Civil Filing Fee(1)
Amount :                      $60.00
2:CV10-02263
2010-510000    11 - Special Fund F/F(1)
Amount :                     $190.00
2:CV10-02263
2010-086400    Filing Fee - Special(1)
Amount :                     $100.00
Credit card Payment : 1155 R8720B / 350.0
0
```

1. Plaintiff Peter Szanto is an individual, over 18 years of age and a citizen of California.

2. The Honorable Charles Stevens <u>Crandall</u> is Judge of the California Superior Court in San Luis Obispo County. Judge Crandall is a state actor who <u>acted outside the bounds of his jurisdiction</u> as a Judge. Judge Crandall's actions thereby caused deprivation of Szanto's civil rights by improper exercise of the privilege of judicial authority under color of law. Said judicial authority being created by the state of California. And therefore defendant Crandall is a state actor.

3. Defendants Peter Kurt Peterson, Edward Donald Thirkell, Robert Samuel Lewin, Julia Eva Lingys, Kenneth Howard Horowitz, Katharina Nina Reynolds are all members of the State Bar of California. And thereby are officers of the courts of California. And are therefore state actors. These defendants <u>acted outside the bounds of their jurisdiction</u> as court officers. These defendants abused and co-opted and debased their authority, duties and responsibilities for personal gain and used perjured and terroristic tactics against plaintiff in defiance of the limitations of their authority.

4. Jurisdiction is appropriate in California, because all parties to this action are California citizens. Jurisdiction is appropriate in this USDC division, because Judge Crandall resides here. Jurisdiction is appropriate in this Court because all of the matters occurred in California. Jurisdiction is appropriate because all of the defendants

are officers of the state courts of California and therefore it would be improper to ensue in the forum wherein the defendants are officers.

5. The issues herein, among others, are the Federal questions relating to: 1) intentional deprivation by officers of the courts of California of plaintiff's civil rights by the use of procedure and rulings based on non-existent laws to thwart Peter Szanto's attempts to pursue redress regarding the estate of his late parents as well as creditor claims against his late parents estate not covered by any testamentary provisions; 2) deprivation of plaintiff's civil rights by officers of the courts of California who intentionally abused and misused judicial process in manners never contemplated by legislation so that plaintiff has been unable to redress his valid grievances and claims as allowed by law; 3) defendants have brought at least three original actions in the courts of California to stymie plaintiff's ability to redress his probate / trust grievances.

### *** All references herein to the trust are intend to reference the Paul and Klara Szanto Revocable Trust of 1991.  ***

6. The fundamental facts of the case are these. Plaintiff's son Phillip Szanto was born in 1984. Sometime in 2001, while still a minor, Phillip began a close personal relationship with defendant Robert S. Lewin, a man 41 years his senior. It was not until 2006, that plaintiff

became aware of the entire depth, breadth and extent of the relationship between the two men.

7. In 2003, Phillip with the assistance of Mr. Lewin filed the first of at least 3 complaints against plaintiff [EXHIBIT A].

8. On July 25, 2005, Phillip, represented by Mr. Lewin filed a complaint against his father, Peter Szanto [EXHIBIT B]. Filing of the complaint was contrary to the Rules of Professional Conduct Rule 4-210(A) which prohibits attorneys from paying the personal expenses of clients. Lewin's admission, under oath, that he paid all of Phillip's expenses is at [EXHIBIT C-page 5:22-24]: "Since Phillip left his father's house, my wife and I have paid ALL of his support for food, clothing, shelter, travel entertainment, etc."

9. To increase Peter Szanto's costs of defending himself, Mr. Lewin, impermissibly and contrary to law, split the cause of action and brought a supplementary action at the Hemet Courthouse in Riverside County. [EXHIBIT D]. The underlying theory of that case focused on a letter of conciliation and love Peter Szanto had written to his son. But the truth was that the Hemet Courthouse is 5 miles from the home Phillip and Mr. Lewin share, but 120 miles from Peter's residence. Defendant Lewin mocked Peter Szanto when he was informed that Peter Szanto's counsel charged portal to portal fees for Hemet appearances. Lewin laughed about the extra anguish that he was able to inject into the series of cases merely by using his position as an officer of the court to divide one action into two. [See

allegations regarding intentional infliction of emotional distress.]

10. Trial was scheduled in Hemet , but when Phillip and Mr. Lewin failed to appear for that trial, the matter was dismissed [EXHIBIT E].

11. The fundamental effort in the **cases** of Phillip Szanto vs. Peter Szanto, was not merely to obtain money for non-existent wrongs, imagined harm and fabricated causes of action but also to bog Peter Szanto down in a series of cases that would completely eviscerate and destroy his finances as well as distract Peter Szanto from trust changes that his siblings and defendants had secretly undertaken. And as has been shown in the delay defendants were able to achieve, make Peter Szanto's ability to protect his rights in the estate of his parents more difficult to have adjudicated.

12. On May 17, 2006, defendant Horowitz began an action in San Mateo County [EXHIBIT F] attempting an end-run around California probate law.

13. When Peter Szanto challenged Horowitz's legal trickery, defendants Thirkell, Lewin, Lingys joined the case.

14. Of most profound evidence regarding the intention of defendants to abuse and misuse the laws is that their action was predicated on the principle established in *Estate of Heggstad* (1993) 16 Cal.App.4th 943. Defendant Thirkell was lead counsel on the *Heggstad* case which established principles for trust transfer. And therefore should have known, <u>more so than anyone else</u>, in deepest particularity the instances in which *Heggstad* relief was available as a matter of law.

15. On appeal [EXHIBIT G]. The Court of Appeal recognized that there was no basis at law for avoidance of probate in this case [EXHIBIT G – p.9 – 3rd ¶]; "We confess that we are perplexed as to why (putative trustees) refer to their lower court petition as a '*Heggstad* petition'."

16. During the pendency of the appeal [EXHIBIT G], after 3 ½ weeks of jury trial, the jurors completely exonerated Peter Szanto in the Orange County action [EXHIBIT H].

17. Plaintiff's defense of the entirety of the actions [EXHIBITS A, B, D] cost well over $1,450,000.00 in attorneys' fees, costs and lost income.

18. Subsequently, plaintiff lost additional income while defendant Lewin unnecessarily appealed the Orange County case before dismissing the matter with prejudice [EXHIBIT I].

19. During the pendency of [EXHIBIT G] plaintiff and his father (Paul Szanto) signed a written agreement to resolve their disputes regarding various real property projects and transactions they had undertaken together and which had been mismanaged into foreclosure by Peter's siblings. The agreement between Peter and his father became a lien against real property owned by Paul Szanto.  Disputes arose regarding that lien.

20. On October 30, 2007 Peter Szanto began an action in San Luis Obispo County, [EXHIBIT J]. That case was assigned to defendant Crandall in his capacity as a judge of the California Superior Court.

21. California Code of Civil Procedure § 405, et seq, allows a judge to sign a Notice of Pendency of Action on behalf of a *pro se* litigant. Judge Crandall signed such a notice on behalf of Peter Szanto [EXHIBIT K]. CCP § 405 required Judge Crandall to determine the likely validity of plaintiff's claim and the fact that the *prima facie* facts warranted the recordation of a *lis pendens*. Judge Crandall made that determination that Peter Szanto would likely prevail and that the claims constituted a lien against real property by signing the notice.

22. Defendants Peterson and Reynolds represented Paul Szanto in [EXHIBIT J]. During eight months, defendants brought three separate vexatious litigant motions against Peter Szanto. All the motions were denied or withdrawn.

23. However, the motions did have the effect desired by defendants of engendering prejudice and bias in defendant Crandall. In [EXHIBIT L] defendant Crandall not only expunged the *lis pendes* he himself had determined and adjudged appropriate and granted, but awarded attorney's fees to defendants Peterson and Reynolds and against plaintiff, even though plaintiff's sole act had been the presentation of information and evidence for Judge Crandall's sole and exclusive determination. Effectively, plaintiff's civil rights (the statutory right to have a judge authorize a *lis pendens* on his behalf) were taken from him by defendants false representations regarding vexatiousness, forged declarations from Paul Szanto, failure to participate in discovery and defendant Crandall's intentional acts

that exceeded his jurisdiction (awarding attorneys' fees against plaintiff on the basis that Crandall's own grant of a *lis pendes* was in sanctionable against plaintiff). In effect, plaintiff was ordered to pay for having followed the rules, because Judge Crandall issued the *lis pendens* after Peter Szanto made a request that Judge Crandall could have denied. That is, CCP 405 makes the filing of a *lis pendes* the exclusive prerogative of the judge *vis a vis pro se* litigants. Peter Szanto merely asked for judicial review of his request – Judge Crandall approved that request. Subsequently Judge Crandall awarded attorneys fees against Peter Szanto, even though the entirety of the decision and act were exclusively Judge Crandall's.

24. Subsequently, Crandall overlooked the fact that in the itemization of attorney's fees defendant's Peterson and Reynolds submitted, sought fees for those periods of time during which defendants had previously claimed lack of service !! IE, they claimed lack of of service, but sought attorney's fees for that period of time during which they claimed not to have notice of a case on which they were actively working and seeking recompense.

25. After the San Luis Obispo action was duly served, defendant Horowitz undertook facilitation of an improper transfer of Paul Szanto's assets, under the guise of a durable power of attorney [EXHIBIT M] so as to avoid all possibility of having to pay upon Peter Szanto's potential claim in the San Luis Obispo action. That transfer of assets was completed by way of a deed of trust that

was likewise entered into to avoid plaintiff's claims [EXHIBIT N]. The deed of trust was improperly entered into during the pendency of matters regarding that property in the Court of Appeal [EXHIBIT G]. Proceedings in the Court of Appeal, as a matter of law, stay all transfers regarding property that is the subject of the appeal.

26. After prevailing in the Court of Appeal, plaintiff undertook to continue his trust challenge [EXHIBIT O]. However, that effort was thwarted by defendants Horowitz, Thirkell and Lingys' subterfuge.

27. Defendants' stratagem was as follows: when the San Mateo action [EXHIBIT F] began, defendants claimed that the trust's situs of administration was Tehama County [EXHIBIT P].

28. Two court days before the trust hearing in Tehama County defendants changed the situs of trust administration to San Mateo County [EXHIBIT Q].

29. As part of that change in situs of trust administration, defendants brought a motion for change of venue, which was only granted after several months. However, it was not until defendants surprise production of [EXHIBIT Q] that the Tehama court changed venue. Defendants entire effort was focused on making Peter Szanto appear to be a ridiculous litigant who had foolishly overlooked venue requirements. When, in fact, the document regarding the change of venue was never served on plaintiff and surfaced only surreptitiously when defendants' change of venue motion was going to be denied.

30. After plaintiff's trust transfer safe harbor and trust challenge were calendared, defendants brought another vexatious litigant motion in San Mateo [EXHIBIT R]. The hearing of that matter is calendared for April 1, 2010. As with the previous vexatious litigant applications, defendants' current motion is filled with statements known to be false (because they are *res judicata* from previously decided cases) and matters the intentional false revelation of which are not covered by the Civil Code § 47, because they are communicated with malice and intent falsely to represent the truth of the matters asserted.


## First Cause of Action for Deprivation of Civil Rights


31. The elements of a Civil Actions under 42 USC 1983 have two essential proof requirements: (1) that defendants acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.

32. Here, plaintiff alleges that defendants' intentional conduct, while acting under color of their authority as officers of California courts, has deprived him of his ability to redress his grievances regarding his parents' estate / trust as guaranteed by *U.S. Constitution*, Amendment 1.

33. Defendants acts focused on making false representations to various courts so as to obtain an unfair and improper advantage which they could not otherwise have obtained. Defendants false representations have been the sole and only reason for the delays that have occurred in Peter Szanto's efforts to bring matters regarding his parents' estate / trust to a fair and complete hearing. The essential substance of plaintiff's claim is that by deprivation of plaintiff's rights, defendants have prevented plaintiff from fully litigating his claims regarding his parents' estate.

34. 42 USC 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation. Plaintiff alleges that the defendants, jointly and severally, used their status, standing and privilege as officers of the courts of California to work a deprivation of plaintiff's fundamental rights of access to courts to redress his grievances.

35. Had defendants not been able to use the color and prestige of their office to obtain special treatment before the courts, they would have been unable to work that deprivation.

36. For example, defendants used their position as officers of the courts to bring actions and motions that had no reasonable basis at law – knowing that, as officers of the court, their tactics against a *pro se* litigant would be given deference that they were not otherwise entitled to. Defendants brought a *Heggstad* petition knowing it was

improper. That same *Heggstad* petition was never signed by any of the attorneys presenting that motion as required by law. Defendants have brought 5 unsuccessful vexatious litigant motions (prior to the one calendared for April 1, 2010), knowing them to be inappropriate and unwarranted; but knowing that the shock value is sufficient to bias courts against plaintiff.

37. Defendants have abused the law of proceeding *in forma pauperis*, which is intended to be confidential, by seeking and obtaining copies of plaintiff's *in forma pauperis* applications and using that as argument in their pleadings; even though prohibited by CRC 3.50

38. Defendant Crandall knew that *pro se* litigants have the right to seek original judicial review of whether the court will grant them a *lis pendens*. Crandall, solely by his own decision making and judgment, granted plaintiff a *lis pendens*. After seven months of unrelenting and scurrilous attack and accusations of improper conduct by the other defendants, Crandall retracted his own personal decision about the *lis pendens*, changed his mind and fined plaintiff for having sought Judge Crandall's judicial determination as allowed by law in the first instance.

39. Defendant Thirkell's principle tactic, because of his long standing membership as an officer of the courts of California, has been to claim lack of service as to nearly every document that has been duly and properly served on him. Judicial officers, have invariably believed Thirkell's argument of lack of service, without considering –

the more focused question of how Thirkell happens to be in court at the proper time and place to make that argument that he had not obtained service. The principle rules on-point: *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554 and *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1690 establish that the presence of counsel in court waives notice. In *Alioto,* the court held that appearance waived any and all objection to defects in service.

40. Plaintiff reserves right to supply further examples of defendants' civil rights deprivations.

41. Ultimately, defendants' actions were focused solely and entirely on using improper tactics and strategies to deny plaintiff the opportunity to have this matter adjudicated upon its merits. After nearly seven years since the start of the first action brought by defendants, plaintiff has been unsuccessful in bringing the true facts of his case to hearing, while bogged down with ancillary actions that defendants have brought solely to distract from the decisive issues of the case.

42. By these actions of the defendants Peter Szanto was injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

//

//

## Second Cause of Action for Civil Conspiracy

43. Elements constituting civil conspiracy and liability require a meeting of the minds on the unlawful object or improper course of action. The meeting of the minds need not be a verbal affirmation. In this series of cases, defendants meeting of the minds can be inferred by circumstances: that they knowingly brought various actions to thwart, stymie and distract plaintiff from being able to pursue the merits of his claims. Defendants tactics and stratagems were illegal because they deprived Peter Szanto of civil rights in a manners that would never have been attempted (as described supra) or have been permitted (facts supra) if defendants were not officers of the courts of California and their actions presumed circumspect *vis-à-vis* a *pro se* litigant.

44. Fundamentally, it is not the conspiracy itself that gives rise to the cause of action; it is the torts committed and the wrongs done in furtherance of that civil conspiracy that do.

45. Here plaintiff's torts are enumerated in the other causes of action as well as the factual statement, supra.

46. By these actions of the defendants Peter Szanto was injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

47. Plaintiff reserves right to amend this conspiracy cause of action.

## THIRD CAUSE of ACTION

## for Abuse of Judicial Process

48. The two main elements of a cause of action for abuse of process are; "an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168. "Process is action taken pursuant to judicial authority.... [¶] Merely obtaining or seeking process is not enough; there must be subsequent abuse, by a misuse of the judicial process for a purpose other than that which it was intended to serve." *Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 530-1.

49. As recited in the factual statement of this case, defendants' ulterior purpose was to crush plaintiff's desires for a fair hearing regarding his parents' estate / trust irrespective of truth, law or justice.

50. And second, defendants' willful acts were the improper use of the process of the court in the regular conduct of the proceeding: for example – 1. knowingly misstating the rules of *Heggstad* – 2. bringing multiple  vexatious litigant motions solely for the improper purpose of biasing courts against plaintiff – 3. improperly splitting causes of action to harass and annoy plaintiff and to drive up his litigation expenses – 4. making false statements of material fact known to be false that are unprivileged – 5. bringing actions against plaintiff solely for the purpose of driving him into financial ruin so

that he is unable to obtain the redress of his grievances by being represented by counsel

51. By these actions of the defendants Peter Szanto was injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

52. Plaintiff reserves right to amend this list regarding abuse of process.

## Fourth Cause of Action for Malicious Prosecution

50. The necessary elements of an action for malicious prosecution are: (1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice. *Jaffe v. Stone* (1941) 18 Cal.2d 146 accord *Ferraris v. Levy* (1964) 223 Cal.App.2d 408.

52. As outlined above, three judicial actions [EXHIBITS A, B, D] prosecuted by the  defendants were terminated in favor of Peter Szanto.

53. The facts and evidence presented in all three cases showed that there was no probable factual basis or reasonable / just cause for any of those actions on any basis or factual scenario whatsoever.

54. As the facts will show all three actions were undertaken by the defendants with the malicious intention of depriving Peter Szanto of the benefit of his parents' estate / trust by wasting time and money contesting defendants' frivolous action against him.

55.  By these actions of the defendants Peter Szanto was injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

56.  Plaintiff reserves right to amend this cause of action for malicious prosecution.

## Fifth Cause of Action for Barratry

57.  Barratry is the tort of frequently exciting and stirring up suits and quarrels. *Rubin v. Green* (1993) 4 Cal.4th 1187, 1190. In this case defendants Peterson, Thirkell, Lewin, Lingys, Horowitz, and Reynolds have taken the Szanto family series of lawsuits as their own personal litigation jackpot from which they mine fees and income while knowing that the family could have settled their trivial disagreements 5 years ago !!!  quarrel

58.  The minor Szanto family squabble could easily have been solved without legal intermeddling, but has persisted because defendants improperly keep the family members involved in litigation rather than attempting to obtain conciliation or allowing the matter to come to trial.

59.  The elements of barratry are the improper prosecution of lawsuits and legal actions without any basis or foundation simply to generate

legal fees.

60. Here, defendants have been defeated on three separate actions they have pursued against Peter Szanto. Defendants prosecution of an improper *Heggstad* application was reversed on appeal. Five vexatious litigant motions have been thrown against Peter Szanto without success

61. This series of dismal failure by defendants speaks for itself as cases brought solely to generate fees.

62. Because of the various actions by the defendants Peter Szanto has been injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

63. Plaintiff reserves right to amend this cause of action for barratry.

## Sixth Cause of Action for Subornation of
## Fraudulent Real Property Transfer

64. The sole element of the cause of action for fraudulent transfer is the intentional transfer of property made with the actual intent to hinder, delay or defraud a creditor. The law of such fraudulent transactions is at Civil Code § 3439 et seq.

65. As described above, during the pendency of the San Luis Obispo action, defendants intentionally suborned the improper transfer of

property even though a *lis pendens* gave them actual notice that a claim was being made and prosecuted against that property and any transfer with out court permission was contrary to law. As well, the pendency of the Court of Appeal case [EXHIBIT G] barred transfer.

66. Because of these actions by the defendants Peter Szanto was injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

67.    Plaintiff reserves right to amend this cause of action for fraudulent transfer.

## Seventh Cause of Action for Defamation

68.   The essential elements to sustain a cause of action for defamation are: 1) a material statement of fact that is false; 2) no privilege that protects that statement; 3) a natural tendency of that statement to injure or damage plaintiff.

69. Here, defendants have brazenly uttered statements which they knew not only to be false, but also which had been proven in various courts of law to be false – and which were *res judicata* as applied to the same Szanto defendants in the various cases in the Szanto series of cases.

70. For example, the fact that Peter Szanto did not sue himself in Riverside was proven in 2007, 2008 and 2009. Nonetheless defendants had the temerity to make that same allegation, known to be false, in 2010. No litigation privilege protects this utterance, because the utterance was made with intentional malice.

71. Likewise, allegations that plaintiff's former wife was improperly served during their dissolution action in 2000, were heard and reheard by judicial officers in 2004, 2005, 2007 and 2008. That issue too is *res judicata*. Nonetheless, in 2010, defendants made that false claim again under color of their authority as officers of the courts of California and under color of the litigation privilege, even though their charges regarding the dissolution action are known to false, have previously been decided by various courts and are *res judicata*.

72. Because of these actions by the defendants Peter Szanto was injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

73. Plaintiff reserves right to amend this defamation cause of action.


Eighth Cause of Action for Intentional Infliction of Emotional Distress


74. The elements of the tort of intentional and reckless infliction of emotional distress are:

Complaint USDC CDCA Mar 25, 2010 – pg. 20 of 23

"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965,1001.

75.   The intentional conduct of the defendants related herein is the fabrication and prosecution of three separate malicious court actions against Peter Szanto. Likewise, it is the defendants prosecution of motions and petitions known to be without legal foundation, the legal basis for which were known to be false. In the midst of seeking unjustly to enrich themselves by various meritless and contrived actions defendants knew to a reasonable certainty that their reckless acts against Peter Szanto would inflict grievous harm upon and cause Peter Szanto extreme emotional distress, shame and depression.

76.  As a matter of fact, the defendants simply disregarded the most basic emotions of human decency for the sake of greed and their gluttonous, ravenous desire for mere money.

77.  Because of these actions by the defendants Peter Szanto was injured in mind, body and financially and lost use of his property, paid out medical expenses, suffered general damages, suffered property damage, lost earning capacity, suffered consequential and expectation damages in amounts to be shown by proof.

78.     Plaintiff reserves right to amend this cause of action for intentional infliction of emotional distress.


<u>EXEMPLARY DAMAGES</u>

(As to all defendants.)


79. ¶¶ 1-78 are incorporated here as though fully set forth at this point. Peter Szanto alleges further damages against all the defendants that they are guilty of fraud, oppression and malice.

79.  Malice means conduct by defendants carried out in conscious disregard of the rights of plaintiff. Here, defendants have pursued contrived actions, motions and petitions in conscious close the eyes to of truth and the law and thereby disregarded their legal obligations not to pursue actions they know to be false.

80. Oppression is despicable conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights. Here that despicable conduct was pursuit of legal actions known to be false and contrived – pursued with wanton disrespect for plaintiff's rights.


Thereon, Peter Szanto seeks a further award commensurate to the harm caused by defendants as shall be shown by proof.

**Prayer**

*Pl(iantiff seeks $2,000,000/ damages.*

Plaintiff seeks an award commensurate with the harm and damages which will be shown by proof. Plaintiff also seeks an award of additional damages to make an example out of defendants such that further acts as described herein will never again be attempted. And plaintiff prays for such further relief as this Court may deem just and equitable.

VERIFCATION

As to all of the matters stated herein, I declare that I personally know them to be true, or that I declare them to be true based on my personal information and belief that they are true.

Dated 3/29/10 _____ Peter Szanto

982.1(1)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

Phillip Szanto
P.O.Box 10451
Newport Beach, CA 92658
TELEPHONE NO: 949.644.5040   FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): pro per

NAME OF COURT: Superior Court of Calif. in Riverside
STREET ADDRESS: 4050 Main St.   County
MAILING ADDRESS: Riverside, CA 92501
CITY AND ZIP CODE: 909.955.1060
BRANCH NAME:

PLAINTIFF: Phillip T. Szanto

DEFENDANT: Victor Szanto,
Arnold J. Breit, and Peter Szanto

☒ DOES 1 TO ~~1000~~ 979

**FOR COURT USE ONLY**

**IMAGED**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 21 2003

K. Jackson

CASE NUMBER:

RIC 396657

COMPLAINT—Personal Injury, Property Damage, Wrongful Death
☐ AMENDED (Number):
Type (check all that apply):
☐ MOTOR VEHICLE   ☒ OTHER (specify): Medical malpractice,
  ☐ Property Damage  ☐ Wrongful Death  negligence
  ☐ Personal Injury  ☒ Other Damages (specify): special damages
Jurisdiction (check all that apply):
☐ ACTION IS A LIMITED CIVIL CASE
  Amount demanded  ☐ does not exceed $10,000
    ☐ exceeds $10,000, but does not exceed $25,000
☒ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint
  ☐ from limited to unlimited
  ☐ from unlimited to limited

1. PLAINTIFF (name): Phillip Szanto

alleges causes of action against DEFENDANT (name): Victor Szanto, Arnold Breit, Peter Szanto

2. This pleading, including attachments and exhibits, consists of the following number of pages: **five**

3. Each plaintiff named above is a competent adult

  a. ☐ except plaintiff (name):
    (1) ☐ a corporation qualified to do business in California
    (2) ☐ an unincorporated entity (describe):
    (3) ☐ a public entity (describe):
    (4) ☐ a minor  ☐ an adult
      (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) ☐ other (specify):
    (5) ☐ other (specify):

  b. ☐ except plaintiff (name):
    (1) ☐ a corporation qualified to do business in California
    (2) ☐ an unincorporated entity (describe):
    (3) ☐ a public entity (describe):
    (4) ☐ a minor  ☐ an adult
      (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) ☐ other (specify):
    (5) ☐ other (specify):

☐ Information about additional plaintiffs who are not competent adults is shown in Complaint—Attachment 3.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
982.1(1) (Rev. July 1, 2002)

COMPLAINT—Personal Injury, Property
Damage, Wrongful Death

Code of Civil Procedure, § 425.12

EXHIBIT

A

| SHORT TITLE: Szanto v. Szanto | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff (name):
    is doing business under the fictitious name (specify):

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
    a. ☐ except defendant (name):
        (1) ☐ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity (describe):

        (4) ☐ a public entity (describe):

        (5) ☐ other (specify):

    c. ☐ except defendant (name):
        (1) ☐ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity (describe):

        (4) ☐ a public entity (describe):

        (5) ☐ other (specify):

    b. ☐ except defendant (name):
        (1) ☐ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity (describe):

        (4) ☐ a public entity (describe):

        (5) ☐ other (specify):

    d. ☐ except defendant (name):
        (1) ☐ a business organization, form unknown
        (2) ☐ a corporation
        (3) ☐ an unincorporated entity (describe):

        (4) ☐ a public entity (describe):

        (5) ☐ other (specify):

    ☐ Information about additional defendants who are not natural persons is contained in Complaint—Attachment 5.

6. The true names and capacities of defendants sued as Does are unknown to plaintiff.

7. ☐ Defendants who are joined pursuant to Code of Civil Procedure section 382 are (names):

8. This court is the proper court because
    a. ☒ at least one defendant now resides in its jurisdictional area.
    b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
    c. ☐ injury to person or damage to personal property occurred in its jurisdictional area.
    d. ☐ other (specify):

9. ☐ Plaintiff is required to comply with a claims statute, and
    a. ☐ plaintiff has complied with applicable claims statutes, or
    b. ☐ plaintiff is excused from complying because (specify):

SHORT TITLE:
Szanto v. Szanto

CASE NUMBER:

10. The following causes of action are attached and the statements above apply to each (each complaint must have one or more causes of action attached):
a. ☐ Motor Vehicle
b. ☒ General Negligence
c. ☒ Intentional Tort
d. ☐ Products Liability
e. ☐ Premises Liability
f. ☐ Other (specify):

11. Plaintiff has suffered
a. ☐ wage loss
b. ☐ loss of use of property
c. ☒ hospital and medical expenses
d. ☒ general damage
e. ☐ property damage
f. ☒ loss of earning capacity
g. ☒ other damage (specify):  extreme and outrageous personal injury inflicted by his closest blood relatives.

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
a. ☐ listed in Complaint—Attachment 12.
b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. PLAINTIFF PRAYS for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
a. (1) ☒ compensatory damages
   (2) ☒ punitive damages
b. The amount of damages is (you must check (1) in cases for personal injury or wrongful death):
   (1) ☒ according to proof
   (2) ☐ in the amount of $--- exceeding $5,000,000.00

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows (specify paragraph numbers):

Date: July 18, 2003

Phillip Szanto
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| Szanto v. Szanto | | |

First _____     CAUSE OF ACTION—Intentional Tort     Page **5 1**

(number)

ATTACHMENT TO [X] Complaint    ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name):* Phillip Szanto

alleges that defendant *(name):*    Victor Szanto, Arnold Breit, Peter Szanto

[X] Does ___1___ to __100__

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally caused the damage to plaintiff

on *(date):* July 24, 1984 until 1994

at *(place):* California

*(description of reasons for liability):*

Defendants failed to disclose that they knew, or should have known, to a reasonable certainty that Plaintiff had that medical condition known as amblyopia.

To wit:

Arnold Breit M.D., Plaintiff's blood grandfather, suffers from that same genetically transferred condition.

Victor Szanto M.D., an opthamologist (physician specializing in eye disorders), shortly after diagnosing Paul Szanto, his own father and the Plaintiff's blood grandfather, with amblyopia, examined Plaintiff and failed to disclose Plaintiff's condition of amblyopia.

Form Approved by the
Judicial Council of California
Effective January 1, 1982
Rule 982.1(4)

CAUSE OF ACTION—Intentional Tort

WEST GROUP
Official Publisher

CCP 425.12

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| Szanto v. Szanto | | |

| Second | CAUSE OF ACTION—General Negligence | Page |
|---|---|---|
| (number) | | |

ATTACHMENT TO ☒ Complaint ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):*  Phillip Szanto

alleges that defendant *(name):*  Victor Szanto, Arnold Breit, Peter Szanto

☒ Does  101  to  200

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff

on *(date):*  July 24, 1984 until 1994

at *(place):*  California

*(description of reasons for liability):*

Defendants failed to disclose that they knew, or should have known, to a reasonable certainty that Plaintiff had that medical condition known as amblyopia.

To wit:

Arnold Breit M.D., Plaintiff's blood grandfather, suffers from that medical condition, which is genetically transferred.

Victor Szanto M.D., an opthamologist (physician specializing in eye disorders), shortly after diagnosing Paul Szanto, his own father and the Plaintiff's blood grandfather, with amblyopia, examined Plaintiff and failed to disclose Plaintiff's condition of amblyopia.

Form Approved by the
Judicial Council of California
Effective January 1, 1982
Rule 982.1(9)

CAUSE OF ACTION—General Negligence

WEST GROUP
Official Publisher

CCP 426.12

1   **ROBERT S. LEWIN**
2   28581 Front St.
    Temecula, CA 92590
3   Cal. St. Bar # 53982
    Telephone: (951) 302-2657
4   Facsimile: (951) 302-6715

5   Attorney for Plaintiff



**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUL 25 2005

ALAN SLATER, Clerk of the Court
*B. Howard*
BY G. HERNANDEZ

6
7
8   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9   **FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**
10
11
12   PHILLIP T. SZANTO,                    )
13            Plaintiff,                    )   Case No: 05CC08539
14   v.                                     )   COMPLAINT
15   PETER SZANTO; Does 1- 50               )   1) Identity Theft
16            Defendants                    )   2) Conversion
17   _____       )   3) Invasion of Privacy
18
19                                **JUDGE PETER J. POLOS**
                                  **DEPT. C33**
20                    FIRST CAUSE OF ACTION
21        (Against Peter Szanto and Does 1-50 for Identity Theft)
22        1)     Plaintiff Phillip T. Szanto (hereinafter "Phillip") is a natural person,
23   born July 24, 1984, as the natural son of defendant Peter Szanto.  Phillip was a
24   resident of Orange County at all relevant times herein.
25        2)     Defendant Peter (nmi) Szanto (hereinafter "Peter") is a natural person,
26   father of Phillip, and a resident of Orange County.
27        3)     The names and identities of Does 1-50 are currently unknown to
28   plaintiff.  Plaintiff believes that said Doe defendants conspired with, or acted in

1

*EXHIBIT*

*B*

1    concert with Peter and are responsible for plaintiff's damages.

2        4)    Phillip became an adult under the laws of the State of California on

3    July 24, 2002.  At that time, he was unaware of the matters set forth below.

4        5)    Within one year preceding the filing of this action, Phillip attempted to

5    open a bank account in his name, under his social security number (herein "SSN"),

6    and was advised that an account already existed under his name and SSN.  Phillip

7    was unaware of this account and had never authorized any person to use his name or

8    SSN.

9        6)    Phillip then requested his credit report from Transunion, Equifax and

10   Experion and discovered that massive amounts of credit, in amounts in excess of

11   $500,000.00, existed under his name and SSN , and that he had debt of over

12   $120,000.00.  These accounts were not opened by Phillip, nor were they opened

13   with his knowledge or consent.

14       7)    After receiving this information, Phillip filed a crime report with the

15   Laguna Beach police department on or about August 4, 2004, alleging the theft of

16   his identity by Peter, and alleging a criminal violation of California Penal Code

17   Section 530.5.

18       8)    Phillip also requested his tax returns from the Internal Revenue Service

19   and learned that tax returns under his name and SSN had been filed for at least the

20   tax years 2001, 2002, and 2003 without his knowledge or consent.  Phillip had not

21   signed any of said returns.  These returns showed refunds paid by the United States

22   to him, but Phillip was not aware of, and had not received any of this money.

23   Phillip has reported this information to the United States Attorney for further action

24   and prosecution.

25       9)    Phillip was recently contacted by attorney Elaine Kusel, with the firm

26   of Milberg Weiss, one of the largest class action legal firms in the country.  On June

27   20, 2005, he spoke with Ms. Kusel  and learned that his identity was the lead

28   plaintiff in a multi-million dollar securities, class action litigation, docket #02-CV-

2

4483 (RCC),  filed in the United States District Court for the Southern District of New York.  Phillip had no prior knowledge of this action and had not given his consent, nor had he signed any documents relating thereto.  Phillip has reported this information to the United States Attorney for further action and prosecution.

10)    On June 20, 2005, in his conversation with Ms. Kusel, Phillip learned for the first time that he had been the plaintiff in case #RIC 396657, filed in the Superior Court of the State of California, County of Riverside.   This action was filed without Phillip's knowledge or consent, and he signed no documents connected therewith.  Phillip has obtained copies of the pleadings in this action and has examined the signatures thereon, and alleges that they are not his.  The action has been dismissed by the court for lack of prosecution.  Phillip has reported this information to the Riverside County District Attorney for further action and prosecution.

11)    Phillip alleges that the identity theft referred to in paragraphs 5 - 10 above have all been done by Peter based on the following reasons: 1) Peter has access to all of Phillip's identifying information, including his SSN, and; 2) All of the addresses linked to these activities are either the home address of Peter, or mail box addresses that Phillip knows are used by Peter, and; 3) Some of the accounts include the names of other members of Phillip's family, including his step-mother and siblings.

12)    The actions of Peter violate the following California statutes:

a) California Penal Code § 530.5(a), which provides that it is a crime to use the identifying information of another to obtain credit, goods, or services.

b) California Penal Code §§ 368(d), (e), which provide that it is a crime to abuse a dependent child through forgery, fraud or identity theft.

c) Title 1.6 of the California Civil Code, commencing with section 1785.1, relating to consumer credit reporting.

3

COMPLAINT

d) California Civil Code sections 1798.92 et seq., which define Phillip as a victim of identity theft.

e) Various unknown California and Federal statutes that provide penalties or sanctions for filing false tax returns, improperly taking refunds due to another, forgery of another's signature, filing false documents in court, or committing perjury in a court action.

13)   Phillip has learned that a substantial number of bank accounts, brokerage accounts, and securities accounts presently exist in his name, and under his SSN, with various institutions located in California, throughout the United States, and potentially throughout the world.  These assets are extremely liquid and, unless the accounts are immediately frozen, and defendant Peter restrained from taking any action relative thereto, the monies will certainly be transferred beyond the reach of this court, or otherwise made to disappear by Peter.  Plaintiff has no adequate remedy at law other than immediate orders to freeze the accounts and to restrain Peter during the pendency of this action, and will suffer irreparable damage if such accounts and securities are not preserved.  Simply restraining Peter alone will be ineffective as a matter of practicality as he has demonstrated his utter contempt for the law and judicial process by forging and filing false documents not only with  State and Federal Courts, but also with the IRS.  Moreover, defendants have been unjustly enriched through the theft of Phillip's identity.   Therefore, plaintiff requests that this court declare a constructive trust over all accounts and securities standing in plaintiff's name and under plaintiff's SSN, and that said accounts and securities, wherever they may be located,  be frozen pending the outcome of this litigation, and that the institutions or persons holding such accounts and securities be restrained from closing,  transferring or hypothecating all, or any portion of, such accounts and securities.

14)    As a direct and proximate result of the actions of defendants, and each of them, plaintiff has suffered injury to his person in the form of emotional distress

4

1  and in the form of economic damages in amounts presently unknown, but in excess

2  of $100,000.00, subject to proof at the time of trial.

3      15)    Plaintiff is also entitled to recover punitive damages in an amount to

4  punish or make an example of defendant in excess of $500,000.00, as a result of

5  defendant's fraud, deceit, oppression or malice pursuant to law.

6

7  SECOND CAUSE OF ACTION

8  (Against Peter Szanto for conversion)

9      16)    Plaintiff incorporates the allegations of paragraphs 1 through 15

10  as though set forth in full hereat.

11      17)    In or about 1997, Phillip turned 13 years of age, and as a *bar mitzvah*

12  present from his grand parents, was gifted the sum of $25,000.00.

13      18)    Peter took control of said monies and told Phillip that he would invest

14  them to use for Phillip's education.  By doing so, Peter became a fiduciary of Phillip

15  and held said funds, and the proceeds from their investment, as a constructive

16  trustee for Phillip as beneficiary.  Phillip subsequently attended the University of

17  California, Irvine, and graduated therefrom in 2004, *cum laude* and Phi Beta Kappa.

18  Phillip had earned scholarships for tuition, books and living expenses, in addition to

19  monetary grants.  Peter took possession and control of all grant money and, to

20  Phillip's information and belief, Peter paid little, if anything toward Phillip's tuition,

21  books and living expenses, as those monies were paid by the scholarships earned by

22  Phillip, or by compensation from jobs done by Phillip.

23      19)    Although Phillip became an adult in 2002, Peter has failed in his

24  fiduciary duty to turn over the *bar mitzvah* money and the grant money to Phillip,

25  and, therefore, is wrongfully exercising dominion and control over said property,

26  and has converted same.

27      20)    Phillip was also given twelve (12) Salvadore Dali prints as a gift from

28  his grandparents.  Phillip is informed and believes that their value is in excess of

5

$100,000.00. Peter took possession and control over said prints and has failed and refuses to account to Phillip for them or to advise Phillip of their whereabouts.

21)     When Phillip turned 16 years of age, he began working at various jobs, including working for several years at Starbucks. During that time he earned salary, which was paid in the form of checks, and stock options for Starbucks stock, which has appreciated and become valuable. Peter took possession and control of said salary and options, telling Phillip that he would invest the money and buy Phillip a car when he turned 18. When Phillip turned 18, Peter refused to him a car and also refused to turn over the money and stock that belonged to Phillip, or to account therefor, thereby converting same. Peter instead purchased a new car for himself.

22)     Phillip is informed and believes that all of his money and property converted by Peter has been transmuted into bank accounts, brokerage accounts and securities that are being held in Phillip's name and SSN, but under the wrongful control of Peter. Peter has been unjustly enriched by the conversion of Phillip's property and a judgment for the value of the property with interest would be inadequate. Thus, Peter is not only a fiduciary who has breached his duties to Phillip, but is also a constructive trustee of all accounts in Phillip's name.

23)     Phillip is aware that Peter has off-shore accounts in Switzerland and other countries that are not subject to discovery or execution by U.S. authorities. Unless this court declares Peter to be a constructive trustee over accounts and securities standing in Phillip's name and SSN, there is high probability that the monies will disappear and plaintiff will be left with no practical or legal remedy and will be irreparably damaged. Therefore, plaintiff requests injunctive relief as incorporated herein from the First cause of action and as specifically set forth in the prayer below. In addition, plaintiff requests the greater of the principle, in excess of $150,000.00, plus interest at the legal rate of 10% from the date of conversion, or the return of all funds in the constructive trust plus profits earned from the investment/appreciation of same.

### THIRD CAUSE OF ACTION

(Against Peter Szanto for Invasion of Privacy)

24) Plaintiff incorporates the allegations of paragraphs 1 through 15 as though set forth in full hereat.

25) The right to the use of plaintiff's name and his SSN belong uniquely to plaintiff and are a matter of his personal right of privacy, and the use thereof is a matter that uniquely concerns plaintiff's peace of mind.

26) In doing all things alleged herein, Peter intentionally and wrongfully intruded upon the solitude and seclusion of Phillip in his private affairs or concerns, including, but not limited to intrusion upon Phillip's credit affairs. Such intrusion would be highly offensive to any reasonable person.

27) The tortious actions of Peter have damaged Phillip in his emotional, mental and physical aspects, and Phillip has been generally damaged in an amount presently unknown, but in excess of $100,000.00, subject to proof at time of trial.

WHEREFORE, PLAINTIFF PRAYS:

1) Under the First and Second causes of action that the court declare a constructive trust, belonging to plaintiff, over all accounts and securities standing in plaintiff's name and under plaintiff's SSN, and that said accounts and securities, wherever they may be located, be frozen pending the outcome of this litigation, and that the institutions holding such accounts and securities be restrained from closing, selling, transferring or hypothecating all, or any portion of, such accounts and securities until further order of this court.

2) That the court issue an *ex parte* temporary restraining order, without notice, restraining Peter Szanto, all those acting under his direction or in concert with him, and all persons holding any accounts or securities standing in plaintiff Phillip Szanto's name and under plaintiff's SSN , wherever such accounts or securities may be located, from closing, selling, transferring or hypothecating all, or any portion of, said accounts and securities until further order of this court.

7

000 7

3)     That the court issue its order to show cause as to why the court should not issue an injunction *pendente lite*, restraining Peter Szanto, all those acting under his direction or in concert with him, and all persons holding any accounts or securities standing in plaintiff Phillip Szanto's name and under plaintiff's SSN , wherever such accounts or securities may be located, from closing, selling, transferring or hypothecating all, or any portion of, said accounts and securities until further order of this court.

4)     Under the First and Third causes of action for general and specific damages in excess of $100,000.00.

5)     Under the Second cause of action, the greater of the principle amount of the trust, in excess of $150,000.00, plus interest at the legal rate of 10% from the date of conversion, or the return of all funds in the constructive trust plus profits earned from the investment/appreciation of same.

6)     Under the First and Second causes of action for punitive damages in excess of $500,000.00, by way of example or for punishment, as provided by law.

7)     Under the First and Second causes of action, attorney fees in a reasonable amount pursuant to statute.

8)     Under all causes of action, costs and such other and further relief as the court may deem just and proper.

Dated: July 21, 2005

By: Robert S. Lewin, Attorney for
Plaintiff, Phillip Szanto

8

COMPLAINT

**ROBERT S. LEWIN**
28581 Front St.
Temecula, CA 92590
Cal. St. Bar # 53982
Telephone: (951) 302-2657
Facsimile: (951) 302-6715

Attorney for Plaintiff

# CALIFORNIA COURT OF APPEAL

## FOURTH APPELLATE DISTRICT, DIVISION THREE

| | |
|---|---|
| PHILLIP T. SZANTO, | ) Court of Appeal #G039194 |
| APPELLANT and Plaintiff, | ) (Super Ct. No: 05CC08539) |
| | ) Hon James Di Cesare |
| v. | ) |
| PETER SZANTO | ) **APPELLANT'S OPPOSITION TO** |
| | ) **APPLICATION TO ENFORCE** |
| RESPONDENT and Defendant | ) **ORDER OF THE TRIAL COURT** |
| | ) **AND TO DISMISS THIS APPEAL** |

**DECLARATION OF ROBERT S. LEWIN IN SUPPORT**

This court has invited opposition to Respondent's <u>Notice and Application to Enforce Order of the Trial Court Regarding Appellant's Improper Designation of Reporter's Transcript</u>, which application was filed in the Court of Appeal on or about December 3, 2007. This opposition was ordered to be filed by January 10, 2008.

Appellant's objections and opposition follow.

EXHIBIT
C

1

OPPOSITION TO MOTION TO DISMISS APPEAL

## OBJECTION TO APPLICATION

Attached as Exhibit 1 are the actual moving papers served upon appellant.  As the court can see, the papers, as served, are in random order, and as such  make no sense whatsoever.  Appellant believes that Peter Szanto does this purposely to confuse and harass appellant as all papers filed by him have been served in this mixed up fashion.  Since no computer produces pages out of order, they can only be mixed up by Peter Szanto intentionally.

Moreover, NO exhibits are attached to the Request for Judicial Notice. Without the exhibits, the application can not be granted.  Appellant is entitled to know what respondent relies upon, especially since appellant has never been served with the Trial Court Order of November 30 (Exhibit A), and is unsure as to which "application" Exhibit C refers.  Appellant is unsure because many of the papers below were never served on appellant, despite demand therefor -- please see Exhibits 2 and 3 attached hereto and ¶¶ 3-9 of the Declaration of Robert S. Lewin explaining same.

It is possible some of Mr. Szanto's mailings have never been delivered by the U.S. Post Office because of the way he mails them -- please see Exhibit 4 hereto and ¶10 of Lewin Declaration -- and because he habitually underpays postage, or violates postal regulations with regard to thickness or size of envelopes.

Without clear notice of the application and exhibits attached thereto, appellant is deprived of notice and opportunity to object or properly respond.

**THE APPLICATION LACKS ANY SUBSTANTIVE MERIT
AS APPELLANT NOTIFIED PETER SZANTO OF THE POINTS RAISED
ON APPEAL AND ATTEMPTED TO FILE SAME WITH THE COURT.
IN ANY EVENT, RESPONDENT HAS SUFFERED NO PREJUDICE.**

**Peter Szanto made no objection to appellant's designation within the period for designation, or counter designation, i.e. by September 20, 2007.** Instead, he attempted to harass appellant's counsel, who lives in Temecula, with several ex parte applications in the trial court, which applications were never served --

2

1    please see Exhibits 3 and 4 hereto.

2         Regardless, before any rulings were made by the trial court, appellant prepared

3    an Amended Designation of Reporter's Transcript that specified the two issues to be

4    raised on appeal. On November 2, the Amended Designation was served on Peter

5    Szanto, and, therefore, from that date forward he has been aware of the issues that

6    appellant plans to raise. Please see Exhibit 5 and ¶11 of Lewin Declaration. It is

7    clear from the statements made in this pending application that Peter Szanto received,

8    and is aware of the issues appellant desires to raise on appeal. Please see, for

9    example, paragraph 10 of the Declaration of Peter Szanto, at page 14 of the

10   application.   Also on November 2, appellant attempted to file the Amended

11   Designation but it was rejected by the court clerk for lack of an order by the appellate

12   court. Please see Exhibit 6.

13        Noteworthy is the fact that Peter Szanto has made no mention of the portions of

14   the Reporter's Transcript that he would like to designate now that he knows the

15   issues to be raised on appeal. The substantive purpose of Rule 8.130 is to allow a

16   counter designation of the record by respondent so that he is not prejudiced by being

17   precluded from using portions of the record to support his position. In this case, Mr.

18   Szanto is absolutely protected by the fact that he filed a Notice of Cross Appeal on

19   November 16, two weeks after he was aware of the issues to be raised by appellant.

20   Since he also has filed his own designation of the record, he could easily include any

21   portions of the record that he wanted, without the trouble of going through all this

22   drama, and without the necessity of any court orders.   Regardless, if there somehow

23   is a portion of the record that he feels he needs to designate, appellant will stipulate to

24   same. **Respondent has not, and will not be prejudiced in any way.**   This

25   application lacks any substantive merit whatsoever.

26   //

27   //

28   //

3

## TO THE EXTENT THAT RELIEF IS NEEDED FROM A TECHNICAL DEFAULT, APPELLANT AND HIS COUNSEL REQUEST SUCH RELIEF UNDER THE PROVISIONS OF CCP §473 AND §473.5.

To the extent that appellant has technically defaulted, and the respondent timely objected, appellant requests relief under the provisions of CCP Sections 473 and 473.5, based upon the declaration of Robert S. Lewin, ¶¶12-13, which follows. Appellant requests that this court order the filing of appellant's supplemental designation attached hereto as Exhibit 5, that whatever relief Peter Szanto requests to further designate the record on appeal be granted, and that this appeal be allowed to proceed.

January 8, 2008                                    Respectfully submitted,

_____

Robert S. Lewin, for Appellant

### DECLARATION OF ROBERT S. LEWIN

I, Robert S. Lewin declare:

1.   That I am an attorney at law licensed to practice before all courts in the State of California, and that I have represented appellant Phillip Szanto continuously since the commencement of this action until the present time.  All matters stated herein are of my own personal knowledge, and I could and would competently testify as set forth below.

2.   Attached hereto as Exhibit 1 are the actual moving papers served upon me regarding this application.  The papers are stapled as originally received, and the court will note that the staple has not been removed so that the papers could be

4

1  copied.  This mish-mash of papers is Peter Szanto's standard operating procedure, as

2  all papers served on me since he has represented himself are served in this fashion.

3  Exhibit 1 is the totality of all that was served upon me.  None of the exhibits

4  referenced in the request for judicial notice were included.

5      3.  I was never served with the alleged court order of November 30, which is

6  referenced as Mr. Szanto's Exhibit A.  I am uncertain as to which application is

7  referred to as Exhibit C, as Mr. Szanto refused to serve me with any of his ex parte

8  applications.

9      4.  Attached here as Exhibit 2 is a true and accurate copy of my papers filed in

10  objection to Mr. Szanto's initial motion.  Please note paragraph 1 in which I point out

11  and object to the failure to serve the initial ex parte application apparently made in

12  early October.

13      5.  Attached hereto as Exhibit 3 is a true and accurate copy of my declaration

14  filed in opposition to Mr. Szanto's ex parte application noticed for November 9.

15  Please note paragraph 4 as to my objection and demand for service of Mr. Szanto's

16  moving papers.  These papers have also never been served upon me.  Please also

17  note paragraph 3 of this declaration as to the difficulties we have had in dealing with

18  Mr. Szanto and the delusional nature of his claims.

19      6.  For example, in the first paragraph on page 4 of moving papers herein, Mr.

20  Szanto claims that he was paying money for the support of Phillip after Phillip moved

21  out of Mr. Szanto's house in February 2004, and that money was handed over to me.

22  This is either a vicious lie, or delusional on Mr. Szanto's part.  Since Phillip left his

23  father's house, my wife and I have paid ALL of his support for food, clothing, shelter,

24  travel, entertainment, etc., and Peter Szanto has not offered or contributed one dime.

25      7.  During that period of time, Peter Szanto did not even know where his son

26  was living and had no contact with Phillip.  When Peter Szanto tried to illegally break

27  Phillip's post office box in order to stalk Phillip, we obtained restraining orders from

28  the Riverside court.  How could he give Phillip money when he didn't know where

5

1    Phillip lived and a court order prevented any contact?

2       8.    During the course of this action Peter Szanto has accused me and my wife

3    of drugging Phillip, forcing him to have sex with our daughter, brainwashing him and

4    forcing him to keep away from his father. These claims are patently false and

5    delusional.

6       9.    In paragraph 2 of his declaration, at page 13 of the moving papers herein,

7    Mr. Szanto simply lies when he says that he left 8 phone messages with me. Please

8    note, that by his own words, he did not make any effort at objection until after

9    September 20, when it was too late. The calls never happened. In fact, Mr. Szanto

10    refuses to deal with me on the phone, and wants everything in writing, as I learned

11    when I tried to call him regarding an extension to file our opening brief. The bottom

12    line is that I was not aware of his objection to our designation until I received his first

13    motion sometime in mid-October.

14       10.    It is possible that Mr. Szanto has actually mailed papers to me that have

15    not been delivered by the post office.  Attached hereto as Exhibit 4 is an original

16    envelope that contained one of the mailings from Mr. Szanto that I did receive. The

17    scribbled, childlike envelope is similar to others received from Mr. Szanto, and it is

18    certainly conceivable that similar envelopes have been returned by the post office as

19    undeliverable. Another problem is that Exhibit 4 weighed 1 ½ ounces with its

20    enclosure – although this one was delivered even though postage was underpaid, who

21    knows what wasn't delivered? This is not an isolated instance in our history with Mr.

22    Szanto.

23       11.    Once I became aware of Peter Szanto's claim, I prepared an Amended

24    Designation that specified the issues to be raised on appeal and personally mailed it to

25    Mr. Szanto on November 2. Attached hereto as Exhibit 5 is the actual original of that

26    document that I personally attempted to file with the Appellate Division of Superior

27    Court in Santa Ana on November 2. The clerk refused my Amended Designation,

28    and attached hereto as Exhibit 6 is the actual original of the rejection slip given to me

1  by the clerk.

2      12.  At that time I discussed the issue with the clerk and she confirmed what I

3  already believed, namely that if respondent wished to designate further portions of the

4  record, the burden would be on him to obtain an order from the Appellate Court and

5  that the clerk would not honor any "orders" from the Superior Court in this regard.

6      13.  I believed throughout this matter that respondent's ex parte motions and

7  proceedings in the Superior Court were designed solely to harass, as I thought that the

8  only orders that could be made regarding the record on appeal had to be made by the

9  appellate court.  Once I was aware of respondent's objection, I attempted to cure it;

10  although the clerk would not file my amendment, Mr. Szanto was actually aware of

11  the issues to be raised on appeal shortly after November 2.  Based upon my belief of

12  the proper procedure, which was confirmed by my informal discussion with the clerk,

13  I understood that the burden was on Mr. Szanto to get an order from this court if he

14  truly had any substantive reason or need, to designate further portions of the

15  reporter's transcript.  If my belief is mistaken in any way, it is my fault alone and my

16  client should not be prejudiced by having his meritorious appeal dismissed, especially

17  since the technical default is easily cured.

18      I declare the above to be true under penalty of perjury under the laws of the

19  State of California.  Signed January 9, 2008 at Temecula, California.

7

**CH-100**

**Request for Orders to Stop Harassment**

COPY

**(1)**  Your name (person asking for protection):
PHILLIP SZANTO

Your address (skip this if you have a lawyer): (If you want your address to be private, give a mailing address instead):

_____

City: _____ State: ____ Zip: _____

Your telephone number (optional): ( ____ ) _____

Your lawyer (if you have one): (Name, address, telephone number, and State Bar number):
Robert S. Lewin   SBN: 53982
28581 Front Street
Temecula, CA  (951)302-2657

**(2)**  Name of person you want protection from:
PETER SZANTO

Describe the person:   Sex: ☑ M  ☐ F  Weight: _____ 150

Height: __5'9"__  Race: __Cauc__  Hair Color: __Grey balding__

Eye Color: __Unk__  Age: __56__  Date of Birth: _____

Home Address (if you know): 11 Shore Pine Dr.

City: Newport Beach _____ State: CA ___ Zip: 92657 ___

Work Address (if you know): _____

City: _____ State: _____ Zip: _____

**(3)**  Besides you, who needs protection? (Family or household members)

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| Kristen Adams | F | 23 | ☑ Yes  ☐ No | Fiancee |
| Anne Lewin | F | 50 | ☑ Yes  ☐ No | Future mother-in-law |
|  |  |  | ☐ Yes  ☐ No |  |
|  |  |  | ☐ Yes  ☐ No |  |

☐ Check here if you need more space. Attach a sheet of paper and write "CH-100, item 3—Describe Protected Persons" at the top of the page.

**(4)**  Why are you filing in this court? (Check all that apply):
☐ The person in ② lives in this county.
☑ I was hurt (physically or emotionally) by the person in ② he
☐ Other (specify): _____

**(5)**  How do you know the person in ②? (Describe):
My estranged father

_____

_____

Clerk stamps date here when form is filed.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
JUN 26 2006
A. LOPEZ

Fill in court name and street address:
**Superior Court of California, County of**
**RIVERSIDE, HEMET**
880 N. State St
Hemet, CA  92543

Court fills in case number when form is filed.
**Case Number:**
TEC 071190

EXHIBIT D
— D —

RECEIVED ... SOUTHWEST JUSTICE CENTER
2006 JUN 29 A 11 39

**This is not a Court Order.**

Judicial Council of California, www.courtinfo.ca.gov
Revised January 1, 2005, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9

**Request for Orders to Stop Harassment**
(Civil Harassment)

CH-100, Page 1 of 4
→

American LegalNet, Inc.
www.USCourtForms.com

FILED ON DEMAND

Your name: PHILLIP SZANTO

| Case Number: |
|---|
|  |

⑥  Describe how the person in ② has harassed you:

a. Date of most recent harassment: June 22, please see attached declarations

b. Who was there? My attorney

c. Did the person in ② commit any acts of violence or threaten to commit any acts of violence against you?
☑ Yes   ☐ No
*If yes, describe those acts or threats:*
Peter Szanto has a history of physical violence toward his children when he becomes enraged.  He has not committed any acts of violence recently.

d. Did the person in ② engage in a course of conduct that harassed you and caused substantial emotional distress? ☑ Yes ☐ No
*If yes, describe:*
Please see attached declarations

e. Did the conduct of the person in ② described above seriously alarm, annoy, or harass you? ☑ Yes ☐ No

☑ *Check here if you need more space. Attach a sheet of paper and write "CH-100, item 6—Describe Harassment" at the top of the page.*

## Check the orders you want ☑

⑦ ☑ **Personal Conduct Order**
I ask the court to order the person in ② to NOT do the following things to me or anyone listed in ③ :
a. ☑ Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, destroy personal property, keep under surveillance, or block movements.
b. ☑ Contact (either directly or indirectly), or telephone, or send messages or mail or e-mail.

⑧ ☑ **Stay-Away Order**
I ask the court to order the person in ② to stay at least *(specify):*   300   yards away from me and the people listed in ③ and the places listed below: *(Check all that apply):*
a. ☑ My home                            d. ☑ My vehicle
b. ☐ My job or workplace              e. ☐ Other *(specify):* _____
c. ☐ My children's school or child care

If the court orders the person in ② to stay away from all the places listed above, will that person still be able to get to his or her home, school, or job? ☑ Yes ☐ No
*If no, explain:* _____

⑨ ☐ **Others to Be Protected**
Should the other people listed in ③ also be covered by the orders described above?
☑ Yes            ☐ No            ☐ Does not apply
*If yes, explain:* _____
They live with me and it is likely that my father may attempt to take out his anger on them.

**This is not a Court Order.**

Your name: Philip Szanto

| Case Number: |
| --- |
| |

**(10) Order About Guns or Other Firearms**

I ask the court to order the person in ② to be prohibited from owning, possessing, purchasing, or receiving, or attempting to purchase or receive firearms **and** to sell or turn in any guns or firearms that he or she controls.

**(11) ☐ Other Orders**

I ask the court to order the person in ② to *(specify):* _____

_____

_____

_____

**(12) ☑ Temporary Orders**

Do you want the court to make orders now on the matters listed in ⑦, through ⑪ that will last until the hearing? ☑ Yes  ☐ No

*If yes, explain why you need these orders right now:* _____

Please see attached declarations.  My father's actions are irrational and increasingly aggressive.  Now that he has located where I live, I am concerned for the safety of myself and those I love.

_____

☑ *Check here if you need more space. Attach a sheet of paper and write "CH-100, item 12—Temporary Orders" at the top of the page.*

**(13) Delivery of Orders to Law Enforcement**

My lawyer or I will give copies of the orders to the following law enforcement agencies:

a. Name of Agency: Temecula Police Department _____

Address: _____

City: _____ State: _____ Zip: _____

b. Name of Agency: Newport Beach Police Department _____

Address: _____

City: _____ State: _____ Zip: _____

**(14) ☑ Other Court Cases**

Have you ever asked any court for other restraining orders against the person in ② ? ☐ Yes  ☑ No

*If yes, specify the counties and case numbers if you know them.* _____

_____

**(15) ☑ Time for Service**

You must  have your papers personally served on (notify) the person in ② at least 5 days before the hearing, unless the court orders a different time for service. *(Form CH-135 explains "What is Proof of Service?" Form CH-130 may be used to show the court that the papers have been served.)* If your papers cannot be served at least 5 days before the hearing and you need more time, explain why:

_____

_____

_____

**This is not a Court Order.**

Your name: Philip Szanto _____

| Case Number: |
|---|
| |

**(16)** ☑ **No Fee for Filing**

I ask the court to waive the filing fee because the person in ② has used or threatened to use violence against me, has stalked me, or has acted or spoken in some other way that makes me reasonably fear violence. I am asking for a restraining order to stop this conduct.

**(17)** ☑ **No Fee to Serve Orders**

I ask the court to order the sheriff or marshal to serve (notify) the person in ② about the orders for free because that person has stalked me or threatened me with sexual assault.

*(To get free service of the court's orders without paying a fee, you must fill out and file the* Request and Order for Free Service of Restraining Order *(Form CH-101), and if you qualify for a fee waiver, you must also fill out and file the* Application for Waiver of Court Fees and Costs *(Form 982(a)(17).)*

**(18)** ☐ **Lawyer's Fees and Costs**

I ask the court to order payment of my:

a. ☑ Lawyer's fees
b. ☑ Out-of-pocket expenses

The amounts requested are:

| <u>Item</u> | <u>Amount</u> | <u>Item</u> | <u>Amount</u> |
|---|---|---|---|
| Per Statute _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

☐ *Check here if you need more space. Attach a sheet of paper and write "CH-100, item 18— Lawyer's Fees and Costs" at the top of the page.*

**(19)** **Additional Relief**

I ask the court for additional relief as may be proper.

**(20)** Number of pages attached to this form, if any: _5_

Date: June 23, 2006 _____

Robert S. Lewin _____
**Attorney's name**

▶ _____
*Attorney's signature*

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: June 23, 2006 _____

Philip Szanto _____
*Type or print your name*

▶ _____
*Sign your name*

---

**This is not a Court Order.**

Revised January 1, 2005

**Request for Orders to Stop Harassment**
(Civil Harassment)

CH-100, Page 4 of 4

COPY

BY FAX

1   Steven A. Silverstein, SBN 64610
2   Mark W. Huston, SBN 119872
    Robert I. Cohen, SBN 168686
3   SILVERSTEIN & HUSTON
    701 S. Parker St., Ste. 5500
4   Orange, CA 92868
    714-547-2511
5   714-547-0230 (fax)
6   silverstein@silversteinhuston.com

7   Respondent, PETER SZANTO

8

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

APR 24 2007

9       SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              COUNTY OF RIVERSIDE

11

12   PHILLIP T. SZANTO.

13       Petitioner,

14   v.

15

16   PETER SZANTO

       Respondent.

CASE NO.  TEC-071190

Honorable James Wiley, Judge Pro Tem
Dept. 11-5

[PROPOSED] ORDER RE: DISMISSAL OF
PETITION FOR PERMANENT
INJUNCTION

17

18

19

20

21

22     Petitioner, Phillip T. Szanto's Petition for Permanent Restraining Order came on for

23  hearing on January 29, 2007 before The Honorable James Wiley, Judge Pro Tem in the above-

24  entitled Court.

25     Mark Huston appeared on behalf of Respondent.  There was no appearance by or on

26  behalf of Petitioner.  The Court ruled on the Petition as follows:

27   ///

28

EXHIBIT
E

JAN. 29. 2007 11:26AM

NO. 5930  P. 2

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that

1. The Temporary Restraining Order entered on July 26, 2006, be and hereby is expunged;

2. The CLETS ordered that is currently in place also be hereby expunged;

3. The firearms restriction as against Peter Szanto be expunged with the further order that the firearm that Peter Szanto surrendered to the Newport Beach Police Department be returned forthwith to the possession of Peter Szanto; and

4. The Petition for Permanent Injunction be and hereby is dismissed.

APR 2 4 2007

James T. Warren

DATED: _____

JUDGE OF THE SUPERIOR COURT

APPROVED AS TO FORM AND CONTENT AND SUBMITTED BY:

DATED: _____

SILVERSTEIN & HUSTON

MARK W. HUSTON, Esq.
Attorneys for Respondent
PETER SZANTO